The plaintiff's name is 24-1016 Vaughn v. JP Morgan Chase. Would counsel for appellant please make your appearance and proceed. May it please the court, Elliot Shurker on behalf of the appellants. The plaintiff, Vaughn, is a JP Morgan Chase customer. Her account, like all JP Morgan Chase customers, is governed by a deposit account agreement, which is referred to as a DAA. Vaughn sued Chase pleading civil rights and tort claims arising from an alleged incident at a Chase branch. The district court denied our motion to compel arbitration on Vaughn's claim. We submit denying us our contractual right to arbitrate a claim that is plainly within the scope of an undisputedly valid arbitration clause. The district court ruled, and Vaughn does not dispute, that the DAA's arbitration clause is a valid agreement to arbitrate claims related to the plaintiff's deposit account. The only disputed question is whether Vaughn's claims fall within the DAA's broad arbitration clause. It must be resolved, of course, under the clause's plain language. This is what the clause says. It expressly includes, quote, any claims or disputes arising from or relating to this agreement, meaning that, again quoting, any dispute relating in any way to your account or transactions will be resolved by binding arbitration. But perhaps most importantly, the clause states, quoting one more time, Claims are subject to arbitration regardless of what theory they are based on or whether they seek legal or equitable remedies. The only exclusion, the only stated exclusion, is small claims court actions. This court held in Kavlovic that arising from or relating to, as used in the DAA, is broad language. Indeed, the district court relied on Kavlovic to rule that the arbitration clause is indeed broad, which, as the district court recognized, creates a presumption in favor of arbitrability. Now, that conclusion is supported by this court's case law. Well, that leads into the question of whether the test that the court applied is actually the right test. I mean, that was the subject of supplemental briefing. Correct, Your Honor. And as it relates to that supplemental briefing, at least as I understood your position, it was that Granite Rock was essentially an apposite because it involved a narrow arbitration provision as opposed to the broad one here. Did I understand that correctly? Among other reasons, Your Honor. Okay, among other reasons. Well, the case law that we have that is applied, Granite Rock, and we do have some cases that have, for the most part, they involve broad arbitration provisions. And so, at least as best I could tell, and so my question to you is what is the basis for your conclusion that Granite Rock is restricted to narrow arbitration provisions? I didn't see anything in the language of Granite Rock to that effect. What's the basis for your position? Well, it is true that the Supreme Court described the arbitration clause as relatively narrow in Granite Rock. But as I said, among other reasons, and chief among those other reasons, is that the party seeking to compel arbitration in Granite Rock did so on the theory that the very strong policy of compelling arbitration in labor dispute cases would allow for arbitration to be ordered even in the absence of express language in the arbitration clause covering the dispute. That's the central holding of Granite Rock. And why, I submit, it does not appear in this Court's non-labor dispute arbitration case law and never has. This Court's case is construing Granite Rock, however, if I might, beginning with National Nurses Organizing Committees in 2023, says, if I might, for a court to order arbitration, the parties must have consented to arbitrate the disputed issue. At the same time, however, we acknowledge the federal policy favoring arbitration of labor disputes, citing Granite Rock. We recognize these are competing principles, this Court said, but we strike a balance between them by applying a presumption that a dispute is arbitrable unless we may say with positive assurance that the parties intended otherwise. The Court concluded, with no exception provision excluding a particular grievance from arbitration, only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where the arbitration clause is quite broad. That language could have been taken from the Sanchez decision on which we rely. That language could have been taken from the Cummings decision on which we rely. Well, just a few months ago, obviously, post-Cummings, post-Granite Rock, the panel in Brent Electric v. International Brotherhood specifically said that the breadth of the arbitration clause pertains to whether or not the clause is ambiguous. In Granite Rock, the Supreme Court predicated the presumption of arbitrability not on the breadth of the clause but on ambiguity. Now, I frankly don't understand, I'm not a strategist, but it seems semantic, but it seems like a semantic difference that is significant because it involves the legal standard. Granite Rock, I think, is unambiguous in saying that we are predicating the presumption of arbitrability not on the breadth of the arbitration clause but on whether or not it's ambiguous. What Brent Electric says, rightly or wrongly, binds us that we look at ambiguity based on the language, based on the facts. And obviously, the breadth of the arbitration clause would pertain to whether or not the applicability of the arbitration clause to the disputed hand is ambiguous or not. Yes, Your Honor, I was actually just going to get to Brent Electric because Brent Electric on page, Head Notes 23 through 25, rather, talks about a presumption of arbitrability in a labor dispute arbitration clause. But we are talking as between Cummings-Sanchez presumption that arises from broad arbitration clauses and the presumption of arbitrability that the Court was talking about in Granite Rock are two different presumptions. Under Granite Rock, there is still a presumption of arbitrability at times in labor dispute cases. It does not override plain language, of course, but that presumption is that the policy reason that the alternative to arbitrating labor disputes, unlike commercial disputes, is not that the case goes forward in another form. It's what they call industrial strife. Just to make sure that I understand, are you saying that Granite Rock only applies to the arbitrability of labor disputes? No, sir, I'm not. Okay. I'm not. I'm providing the background for the answer to Judge Holmes' question. What we are saying is that the presumption that the party seeking arbitration in Granite Rock relied on had nothing to do with whether the clause was broad or narrow. It had to do with bootstrapping the presumption into a requirement for arbitration when the plain language would not support it. And we commend the Second Circuit's recent decision, which is cited in our supplemental brief, for saying, yes, we still will look to a presumption of arbitrability, but we won't do that first. We don't do that first. First, we look at the plain language of the arbitration clause. And then down the line, we still look at a presumption of arbitrability. But the presumption that we have been talking about throughout in all of our briefing in this case is what does it mean when there's a broad arbitration clause? When you pass all the other tests. I get that. But, I mean, what I understand you to be saying, then, is that the presumption of arbitrability that was at play in Granite Rock was different than the presumption that was at play in this case based upon Cummings and the way that you briefed this case, correct? Correct, Your Honor. Well, then, I mean, we have to figure out, do we not have to do something with Granite Rock? I mean, Granite Rock is a Supreme Court case. It comes after Cummings. If you are not, which I thought I heard you doing to begin with, but if you are not saying that Granite Rock is limited to the labor context, then we have to do something with Granite Rock, don't we? I mean, how does Granite Rock, in some way, form or fashion, has to be dealt with as it relates to what do we do with it in this case, right? Your Honor, I don't disagree at all. This Court has already spoken to Granite Rock in National Nurses and, as I was saying, in Brent Electric. And the language that the Court uses in both of those cases could have been written with a commercial case in mind. As I've read these cases, it's almost as if the Granite Rock line of labor cases and what I would call ordinary or commercial arbitration cases has proceeded down separate tracks and the twain, so to speak, never seemed to have met in the case law, perhaps because of the policy issues that relate solely to labor disputes. I can't say for certain, but what I can say for certain is that when you look at National Nurses and you look at Brent Electric, you see the language that appears in Cummings and in Sanchez and on which we Fourth, and most importantly here, where a contract contains an arbitration cause, there is a presumption of arbitrability, citing to Granite Rock. This means that in order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration cause is not susceptible of an interpretation that covers the asserted dispute. Doubt should be resolved in favor of coverage. That just abrogates either ambiguity or breadth as a qualifying initiating requirement. Well, Your Honor, my point about that is that breadth has nothing to do with Granite Rock or its project. The language you read would say not only does breadth not have anything to do with it, ambiguity has nothing to do with it either. That's what this court is drawing from Granite Rock. I think you would raise an awful lot of eyebrows if we didn't at least have ambiguity as a conditioning requirement before we invoke a presumption. Well, Your Honor, that language appears in Granite Rock, but that's why I mentioned the Second Circuit's departure from Louis Trifas, which recognizes that in the commercial context the presumption still has a role and the presumption has a very limited role. And I don't want to diminish this, but it is a very limited role that the presumption has in a case where we're talking about breadth. Because if I might, Judge Ebel, continue with what followed that language in Prentelectric. The presumption of arbitrability arises from congressional policy in favor of disputes by the parties to the machinery of arbitration. This is because in the labor context arbitration is the substitute for industrial strife. So the policy issues in labor disputes are very different. And as I say, that may be why there hasn't been a cross-cutting of the two lines of authority. But the only... So you're thinking that this presumption varies depending on whether it's in the labor context or the non-labor context. The opening presumption of arbitrability may be affected by whether we're talking about a labor case or a commercial case. But we don't have to worry about a presumption of arbitrability here. Your Honor, we're not talking about a labor case. Correct. So you're saying no presumption. No, Your Honor, I'm not. I'm saying the presumption on which we rely, which is in Cummings, which is in the labor context, but which the court has never deported, is that in the instance of a broad arbitration clause, there is a presumption that even collateral disputes are included within the arbitration clause. That's it. If it involves contract construction of the parties' rights and obligations under the contract, right? Correct, Your Honor. Okay. Correct. As I said at the beginning, we start with the plain language of the arbitration clause. And we are very comfortable saying that the plain language of the arbitration clause is invoked by Vaughn's complaint, which is where we look. And that's – let me play off of that for a second. If the plain language of the arbitration clause is essentially determinative in this case, to the extent that one could – and I'm just positing now, talking – arguably there's some tension between Granite Rock and Cummings as it relates to the order of battle as it relates to the presumption or where the presumption fits in. In this case, does the presumption matter at all? Yes, Your Honor, it does. Why does it matter? If the plain language – if in Granite Rock you look at the plain language and you say, boom, is this covered or not? In this case, if you look at the plain language, in your view, as I understood it, it's covered. Correct. You get the same answer under the plain language. Then why does the presumption matter? The only role the presumption plays in our analysis and the only role for any presumption when we're talking about breadth, narrow versus broad, is the presumption about so-called collateral disputes. That's it. Are you saying this is a collateral dispute? No, Your Honor, I am not. Well, then what difference does it make? Then let me talk about the plain language. If I take – if I take what I understand to be your position, which is that – and tell me that this – whether this is – my understanding is correct. If you're saying that this dispute falls within the heartland of the plain language and is therefore a covered dispute, is that – do you agree with that proposition? Yes, Your Honor, I do. If you agree with that proposition, then it is not a collateral dispute, right? I agree. Okay. If it is not a collateral dispute, that's where, as I understand you, the presumption comes into effect, right? Correct. All right. Then why does it matter whether the presumption is considered because you're saying it is not a collateral dispute to begin with? Then let me talk about the plain language, Your Honor. And I know I'm – my time has expired, but if I could just have a minute to talk about the plain language. Go ahead. The only reason, according to the complaint, that Vaughn was at the branch was to exercise her rights as a Chase customer governed by the DAA. And what she says at page 64 of the appendix in her complaint is the effect of the – but for Ms. Vaughn's race, she would not have been denied the right to enjoy all benefits, privileges, terms, and conditions of her contractual relationship as a Chase member. That's the claim. The next paragraph reads, the effect of the practices complained of has been to deprive Ms. Vaughn of the right to enjoy all the benefits, privileges, terms, and conditions of her contractual relationship as a Chase member. For the CATA and the 1981 claims, you read. That's correct. But that's also incorporated in all the other claims. Okay. May I ask you a question? Sure, of course. So I understand your argument about CATA and 1981, but let's say it incorporates all of those prior allegations on the negligent infliction of emotional distress and the defamation claims. For the emotional distress claims, it specifically predicates the tort in paragraph 158 as the false statement by the police that she was acting aggressively when she was not acting aggressively. The defamation claim is saying that she was – the police saying that she was trespassing. So despite – I mean, this is extraordinarily broad language in the arbitration clause, but how does that relate, you know, the false statement by the police officer or to the police officer from the manager or the emotional distress, you know, from that? How does that relate in any way to her rights and responsibilities under the account agreement? Even under the – even if we say that Cummings' language about collateral issues involving contract construction under the party's rights, those don't – I just don't see how those two state tort claims relate in any way to the account agreement. Well, Your Honor, let me answer that two ways. Vaughn would not have been in the bank but for her alleged contractual rights. She was there not to get a drink of water, not to get out of the rain, not as someone coming in who was not – didn't have an account saying I need a roll of quarters. She was there, she says in her general allegations, and then in the specific allegations in the 1981 claim, which in paragraph 156 are integrated into the language and infliction for emotional distress claim, specifically incorporates all paragraphs of this complaint as though fully set forth, not just the general allegations, but all paragraphs. So that was her – her claim is that I was there to exercise my rights to do business. But that's not what the tort was. I understand that, but that's why she was there. Okay. She would not have been there but for the contractual relationship and her alleged desire to exercise her rights under the contract. So what happened as a result perhaps may be considered collateral and that does get back to the – to the small role that the presumption plays here to further respond to Judge Holmes' question with regard to the state tort claims, for example, or more in particular. But that's the only reason she was there and her damages are, as she pleads them, that she couldn't exercise her rights. Now, the tort claim was you called the police, you lied to the police, you did all this other stuff. Well – And she didn't exercise her rights. She didn't get her counterchecks. Well, yeah, but for the COTA in 1981 claims, that's true. But in 158, for the infliction of emotional distress, the damages were not the inability to make a deposit or to make a withdrawal. It was the emotional distress that she had been – that she had incurred, you know, being – having somebody lie to the police. I understand your argument. But I understand your argument that it doesn't matter that the tort does or doesn't fall under it as long as it sprung from her being in the bank. It's related to her contract with the bank, that she was there. She didn't walk into the bank, go up to it as a non-customer, go up to it to tell her demand a bag of quarters, and as the magistrate put it, get smacked in the face for no apparent reason. She was there. She claims in her general allegations and in specifically the incorporated allegations to exercise her rights. What if her manager just kicked her? You know, she's sitting there waiting for a deposit. Let's just say – let me take a silly example. The bank manager comes and kicks her. And she says, you know, I'm going to sue you for assault and battery. And does that relate in any way to the account agreement because the manager assaulted her or battered her because she was there within her rights under the contract? So it really doesn't matter what they do to her as long as it took place within the four corners of that bank. And, Your Honor, I'm not retreating from the position that her damages that she claimed. For example, in 165, which was within the negligent infliction, she says, as a result of defendant's actions, Ms. Vaughn has suffered significant injuries without any explanation. The injuries that she pleaded that are incorporated therein is that she was there to exercise her rights, and she was treated badly at the bank, which would be the same in your example, is that she was there exercising her  They treated her badly, and her damages were I didn't exercise my rights. So it comes down to the same. I know I've gone over my time. Thank you, Counsel. Thank you. We'll hear from Apolli. And would you put an additional five minutes on, please? Counsel, you don't need to take it, but you have it if you want it, the additional five minutes.  Thank you for that. And may it please the Court, my name is Chris Whitney, proudly representing Apolli Janetta Vaughn. The issue in this case is whether Ms. Vaughn's racial discrimination claims and related tort claims are within the scope of the arbitration agreement that concerns financial transactions only. And it clearly does not, as the district court correctly found. Now, whether Cummings or Granite Rock, whichever standard this court deems appropriate, plaintiff would win under either standard. Now, the district court denied Chase's motion under the more stringent Cummings standard. Now, it's clear that Granite Rock is the appropriate standard to use, but again, whichever standard this court selects, the district court's decision must be affirmed. First, I'll discuss the scope of the arbitration provision, and then I'll discuss why Ms. Vaughn's claims do not fall within the scope of the DAA under Cummings or the Granite Rock standard. And then finally, I'll discuss how Chase hasn't provided any evidence to demonstrate that they can compel arbitration of Ms. Vaughn's claims. Let me, before you go through that, and those are all things that I want to hear, but it's sort of a tangential point or an offshoot point as it relates to the Granite Rock-Cummings dispute. Did I understand your supplemental briefing to be correct that even though you believe Granite Rock supplants Cummings, that you nevertheless think we should apply Cummings here? Well, we would say that the court can apply either standard because under either standard, plaintiff would still prevail. The Cummings standard, it favors the presumption of arbitrability, but what that does is it does run the risk of certain claims that parties did not agree to being swept into the arbitration provision, whereas Granite Rock, it focuses more on the actual principles of contract where parties can be compelled to arbitrate issues that they didn't agree to. And here, the parties did not agree to arbitrate racial discrimination claims and tort claims at all. And if you look at the plain language of the arbitration provision, the DAA's arbitration provision states, all claims or disputes related to your account or transaction will be resolved by binding arbitration and not through litigation in court. And then Chase actually goes on to describe further what kind of claims would be included. Claims between you and us about your deposit account, transactions involving your deposit account, safe deposit box, and any related services. Do you agree that the plain language here, going back to when under either test, do you agree that the plain language here is determinative? In other words, it determines that this is not a covered dispute. So in other words, irrespective of any sort of tension that may or may not exist between Granite Rock and Cummings, if you look at the plain language of the arbitration agreement, it doesn't cover this dispute. Would that be a fair statement of your position or no? Yes, it would, Judge Holmes. And if you looked at the plain language, it's limited to banking disputes. It doesn't go outside and just sweep in racial discrimination claims. Words that say banking claims are the arbitrable ones. I thought it said no matter what claim, what your legal right was. I thought that was a very broad expansion of that argument. Well, it's a broad expansion, but if you're looking at the plain language, a customer would assume that any legal theory is going to be under a contract or financial theory. I don't see how that, I mean, that is putting words in that arbitration clause that simply are not there. I'm sorry, I didn't hear that question. That's putting words in that are not in that arbitration clause. That clause says regardless of the legal claim. So, I mean, I would think what the bank is saying is we don't want to have some fine-tuning where you plan a structured complaint around arbitration. We want arbitration for everything, and that's pretty much the way it was drafted. Yeah, and I'm not sure a customer would read that like that. I would think a customer would look at it based on the language of the contract. I don't see anything in the language of the contract. I think the language of the contract is to the contrary. It says no matter what theory you're asserting. Yeah, and so bringing in a racial discrimination claim and tort claims, it doesn't fit into the language of it. So, just for broad language purposes, that language still isn't broad enough, just to say all claims, because based on the plain language, it would appear to be that this is going to be related to banking disputes, because within that whole DAA, it doesn't say anything about racial discrimination. What if she had alleged that because of the racial discrimination, she was denied the right to enjoy all benefits, privileges, terms, and conditions of her contractual relationship as a Chase member? And, of course, I'm reading from the complaint. How does that not relate to her contract with Chase? That's exactly what she alleged for her Dakota in 1981 claims. Yeah, and to answer your question, the district court correctly found that she wasn't even treated as a member. When she walked in, she walked into the bank. I know what the district court said, but how can that possibly be right? Well, she wasn't treated as a member at all. But she was... So you're talking about the manager's intent. She does... Sorry to talk over you, but just to make sure my question is explained. But she is arguing that the effect was to deprive her, regardless of the manager's intent, she was deprived of the ability to carry out her contractual rights. So didn't the district court improperly conflate the manager's intent with the effect of that intent, i.e., to deprive her of her contractual rights? No, because under 1981 and COTA, you don't necessarily need to sign the DAA in order to bring those claims. I can walk into the bank as a black man, sit down, and then, okay, I'm going to open a bank account. I don't have to be a member of that bank to bring a 1981 claim. And that goes back to the case of Barfield v. Commerce Bank. So the plaintiff in that case, he had walked into the bank, attempted to make change with the teller. He was denied. Then a white man comes in shortly after. He's allowed to make change. Now, the court in that case explicitly said he did not have to be a customer in order to bring a 1981 claim. So if Ms. Fawn is bringing claims based on a denial of her contractual relationship, then that would undermine any argument that Chase would make to compel arbitration based on claims related to how she was treated and not related to her account. Let me, if you don't mind, let me interrupt. You didn't have to be a customer to bring a 1981 claim, but she is a customer. She agreed to this provision. And so that's the distinction. I mean, yes, I don't question at all that in a situation where you tried to make change or whatever you could bring in 1981, but she is a customer. And so because she is a customer and because she was aware of this provision, because she agreed to this provision, why isn't she just bound by the plain terms of the agreement? And the agreement says, any dispute relating in any way to my account. And she has an account there, right? Yeah, and she has an account. And again, she wasn't treated as if she did have an account. She walked in, sat down, and was immediately accused of trespassing. So she didn't even get to enjoy the benefits of having a contractual relationship. And that's exactly the point. Going back to Judge Backreich's point, it really doesn't matter what the person who mistreated her was thinking. What matters is as a matter of fact, she had an account. And she was deprived of her ability to exercise her rights under the account, which as Judge Backreich read, that's exactly what the complaint says. And if she was an account holder, per the agreement, she was deprived of her rights to exercise, she was deprived of the right to exercise her privileges as an account holder, that seems to map right on to this provision. And that's hard for me to understand why it wouldn't be covered plain language-wise. And plain language-wise, I would see that differently. I wouldn't see that racial discrimination claims and tort claims would be swept into this arbitration provision, especially when it's stating claims between you and us about your deposit account, transactions involving your deposit account, safe deposit box, and any related services. It's hard to see how claims related to how she was treated or claims related to her dignity or claims related to her identity would fall within this plain language. And again- Do you make a distinction between, just to play up on Judge Backreich's hypothetical, do you think there is a distinction to be made, and I'm not saying Judge Backreich was trying to, but do you think there's a distinction to be made between the assault situation and a situation where you were doing something with your account? In other words, the idea that they just kicked her when she was in there and as she was sitting down, as opposed to trying to engage in actually a transaction here. A distinction between 1981 and the tort claims. Is there a distinction with the difference between those two? Well, under Judge Backreich's hypothetical, those claims would also not fall under this arbitration provision. It would fall outside of the scope. And the same thing with what we're talking about here. Ms. Vaughn didn't even get an opportunity to engage in a transaction before immediately being accused of trespassing. She was basically barred at the door. Sure, she was allowed to sit down in the lobby, but within a minute of her being there, she's confronted by the bank manager and accused of trespassing, and then Ms. Pellett calls the police on her. And then even after Ms. Pellett finds out that she is a member of the bank, she still wants her to leave. She still wants her to leave. So, to your question, that would fall outside the scope, and that would be more in line with your hypothetical as opposed to her just being a member and allowing Chase to enjoy the benefits of the contractual relationship. Ms. Vaughn, we understand you are a member of the bank. We appreciate your business, but you were very, very rude to my assistant manager, and we just do not tolerate such rudeness. You use, and I'm making up facts, it's a hypothetical. You use foul language. We do not permit that. You are offending other, there are other people, patrons of the bank here, and we have to tell you that you are leaving. And so, and then she sues. Now, does that claim relate in any way to her contract? In both cases, that would not relate to her contract, because that would still be outside the scope of her arbitration provision, which goes to all claims or disputes related to your account. That would go to her behavior when she came into the bank. So in that case, Chase would be more, you can actually say that Chase could ask her to leave based on her conduct. So that would be based on her conduct and not based on her account, because whether she, because she didn't even have to have signed the agreement to walk in and then be rude. Okay, let me make up another fact. Okay. What if the manager said, ma'am, you have breached the implied covenant of good faith and fair dealing. She had gone to law school. And said, and because of that, you have abused your contract and we have to tell you to leave. Now, does that relate in any way to the account? Possibly. I would say possibly. So it's really, what we're getting, we're pulling down to is, what words did she use when she kicked her out? Well, no. No, I wouldn't say what words that she used. Well, trespass means that you don't have a legal right to be in there. She's saying, I do have a legal right. Obviously, that's the basis of her defamation claim. And whether or not she has a legal right to have remained in the bank all relates to, arguably, the bucket of rights that she has as a Chase member to remain in the bank. So it wouldn't be based on the language that she used. Because Ms. Vaughn walking in there within a minute and being accused of trespassing without any kind of the language that you're referring to, like Ms. Vaughn being rude or Ms. Vaughn cursing at people, that, within a minute, that would lead to an inference of racial discrimination. Like, why, within a minute, am I being told to leave? And Ms. Vaughn's claims arise from a dispute where, again, she was denied service. And her claims of racial discrimination and tortious conduct are independent of her status as a Chase member and unrelated to any transaction involving her deposit account. You say she was denied service, but it's independent of her bank relationship. That seems to be a non sequitur. If she was denied service, that was absolutely dependent upon her being a bank customer. Well, I can walk in to a Chase bank and attempt to open a bank account and be denied service as well and not even sign anything and not being a member of the bank. I can just simply walk in and then the bank manager can approach me and say, you're not welcome here. And then if they do say something like that, then that wouldn't have anything to do with my bank account. That would have to do with the way I was treated when I walked in. Are you saying, I'm shifting gears for a second. Are you saying, what is your position on the Chase employee declarations that were part of the briefing below? Are they intrinsic evidence or are they not? They would be extrinsic evidence. Like, we can basically just look at the plain language. And what the district court did was they just looked at, they found that the plain language, based on the plain language, that Ms. Vaughn's claims fell outside the scope of the agreement. So what they did was they tried to determine the intent of the parties. And so they looked, just for further support of their position, they looked at some of the declarations. And when they looked at the declarations, they found there was still not any evidence of any intent to sweep racial discrimination claims and tort claims within the arbitration provision. We don't need those declarations for you to win, right? No, no. Those, again, those are, the district court decided to use those just to support their position. But regardless of whether you're looking at the extrinsic evidence, the plaintiff still would come out on top just because these claims do not fall within the scope of the arbitration provision. And ordinary principles of contract law will determine whether an arbitration agreement was validly formed and whether the parties consented to arbitrate a particular dispute. Now, a court may only compel arbitration where it's satisfied that neither the formation of the party's arbitration agreement nor its enforceability or applicability to the issue is in dispute. Formation is not at issue here, is it? You're not questioning that there's a valid arbitration agreement? There's an arbitration agreement to arbitrate banking disputes. You're talking about the scope of the agreement? Yes, we're talking about the applicability to this issue. Okay, all right. Now, both standards recognize that arbitration is a matter of contract. And when deciding whether parties agree to arbitrate a particular matter, courts will usually apply ordinary state law contract principles. And for an arbitration agreement to be valid, both parties must mutually agree to all essential terms. And in this case, there was no meeting of the minds regarding the scope of the arbitration provision, especially to the claims of racial discrimination and tortious conduct. Ms. Vaughn did not consent to arbitrate such claims, and nor was she notified that such claims could be subject to arbitration. The party attempting to compel arbitration bears the burden of demonstrating that a valid arbitration agreement exists. And here, Chase has failed to provide clear evidence that the parties intended for claims like racial discrimination and tortious conduct to be subject to arbitration. And the lack of explicit language in the DAA suggests that such claims were not intended to fall within that scope of the arbitration provision. And given Chase's awareness of prior racial discrimination allegations, the absence of language addressing such claims in the DAA speaks volumes. If Chase had intended to arbitrate racial discrimination claims, it could have easily included explicit language to that effect. And in conclusion, I see my time is on its way out, Chase has not provided sufficient evidence to demonstrate that the arbitration agreement is enforceable with respect to Ms. Vaughn's claims. And the lack of clarity and the absence of any meeting of the minds on the scope of the arbitration agreement further supports this. So we respectfully request that this Court affirm the District Court's decision and deny Chase's motion to compel arbitration, allowing Ms. Vaughn to pursue her claims in the appropriate judicial forum. Thank you. Thank you, Counsel. Thank you for your fine arguments.